IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 4-07-CV |
| v. | ) | 01189SWW |
| | ) | |
| | ) | |
| RINECO CHEMICAL | ) | |
| INDUSTRIES, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

<u>CONSENT DECREE</u>

### TABLE OF CONTENTS

I.   JURISDICTION AND VENUE ................................. -5-

II.   APPLICABILITY ......................................... -5-

III.   DEFINITIONS .......................................... -7-

IV.   CIVIL PENALTY ........................................ -9-

V.   COMPLIANCE REQUIREMENTS ............................... -10-

VI.   REPORTING REQUIREMENTS ............................... -19-

VII.   STIPULATED PENALTIES ................................ -21-

VIII.   FORCE MAJEURE ...................................... -26-

IX.   DISPUTE RESOLUTION ................................... -30-

X.   INFORMATION COLLECTION AND RETENTION .................. -33-

XI.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ........... -36-

XII.   COSTS ............................................... -38-

XIII.   NOTICES ............................................ -39-

XIV.   EFFECTIVE DATE ...................................... -40-

XV.   RETENTION OF JURISDICTION ............................ -40-

XVI.   MODIFICATION ........................................ -40-

XVII.   TERMINATION ........................................ -41-

XVIII.   PUBLIC PARTICIPATION .............................. -42-

XIX.   SIGNATORIES/SERVICE ................................. -43-

XX.   INTEGRATION .......................................... -43-

XXI.   FINAL JUDGMENT ...................................... -44-

Plaintiff United States of America ("United States"), on
behalf of the United States Environmental Protection Agency
("EPA"), filed a Complaint in this action on December 12, 2007,
alleging that Defendant Rineco Chemical Industries, Inc.
("Defendant"), violated Sections 3005(a) and 3010 of the Resource
Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6925(a) and
6930, and Arkansas Pollution Control and Ecology Commission
("APCEC") Regulation No. 23, which incorporates federal
regulations approved by EPA pursuant to RCRA that are part of the
federally-enforceable State hazardous waste program relating to
the generation, transportation, treatment, storage, handling, and
disposal of hazardous waste.  On November 24, 2008, the Court
issued an Order (doc.#85) which granted the United States' Motion
for Leave to File an Amended and Supplemental Complaint, which in
addition to the violations alleged in the Complaint, alleges that
Rineco violated its RCRA Permit 28(H), Modules II(A), III(M),
III(E), XV(A); and 40 C.F.R. §§ 264.31, 264.173, 264.1056,
264.1086(d)(3).

The Complaint alleges that Defendant has treated, stored,
and disposed of hazardous waste in the Thermal Metal Wash unit
("TMW") at its facility located near Benton, Arkansas, without a
RCRA permit, in violation of Section 3005(a) of RCRA, 42 U.S.C. §
6925(a),and APCEC Regulation No. 23 Part 264, Subpart X and Part
270, §§ 264.600, 270.1, 270.2, 270.10; that Defendant has failed

- 2 -

to file with the EPA or the State of Arkansas ("State") a notification and description of hazardous waste activity performed in the TMW unit at Defendant's facility in violation of Section 3010 of RCRA, 42 U.S.C. § 6930; and that Defendant has failed to establish financial assurance requirements for closure of the TMW and related storage units at Defendant's facility in violation of 40 C.F.R. §§ 264.140 - 264.151 and APCEC Regulation No. 23 §§ 264.140 - 264.151.

In addition to the allegations in the Complaint, the Amended and Supplemental Complaint alleges that Defendant has failed to design, maintain, construct, and operate the TMW and other units at Defendant's facility in such a manner as to minimize the possibility of a fire, explosion, or any unplanned sudden or non-sudden release of hazardous waste or hazardous waste constituents to air, soil, or surface water, in violation of Defendant's RCRA Permit 28(H), Module II(A), 40 C.F.R. § 264.31, and APCEC Regulation No. 23 § 264.31; failed to equip numerous open-ended values and lines with caps or plugs in violation of Defendant's RCRA Permit 28(H), Module XV(A), 40 C.F.R. § 264.1056, and APCEC Regulation No. 23 § 264.1056/265.1056; and stored hazardous waste in an open container for more than fifteen (15) minutes in violation of Defendant's RCRA Permit 28(H), Module III(E), 40 C.F.R. § 264.173, RCRA Permit 28(H), Module III(M), 40 C.F.R. §

- 3 -

264.1086(d)(3), and APCEC Regulation No. 23 §§ 264.173,
264.1086(d)(3).

On March 4, 2009, the Court issued a Memorandum and Order
(doc. #91) in which the Court granted the United States' Motion
for Summary Judgment (doc. #40) as to liability on each of the
five claims asserted in the Complaint and denied Defendant's
Motion for Summary Judgment (doc. #13).  The Court further
ordered that the matter would proceed as to any appropriate civil
penalties and as to the three remaining claims in the Amended and
Supplemental Complaint.  Nothing in this Consent Decree shall
supercede the findings of fact or conclusions of law set forth in
the Court's Order dated March 4, 2009.

Defendant denies any liability to the United States arising
out of the transactions or occurrences alleged in the United
States' Complaint and the United States' Amended and Supplemental
Complaint.  Defendant also denies the truth of any allegations in
the Complaint or the Amended and Supplemental Complaint except
the allegations pertaining to venue and subject matter and
personal jurisdiction.

The Parties recognize, and the Court by entering this
Consent Decree finds, that this Consent Decree has been
negotiated by the Parties in good faith and will avoid litigation
between the Parties and that this Consent Decree is fair,
reasonable, and in the public interest.

- 4 -

NOW, THEREFORE, with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.   This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and over the Parties.   Venue lies in this District pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1395(a)(1), because the violations complained of and the claims asserted herein arose in this district, and because Defendant conducts business at facilities located in this district.   For purposes of this Decree, or any action to enforce this Decree, Defendant consents to the Court's jurisdiction over this Decree and any such action and over Defendant and consents to venue in this judicial district.

## II. APPLICABILITY

2.   The obligations of this Consent Decree apply to and are binding upon the United States, and upon the Defendant and any successors, assigns, or other entities or persons otherwise bound by law.

3.   No transfer of ownership or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of the Decree are implemented.   At least thirty (30) Days prior to such transfer, Defendant shall provide a copy

- 5 -

of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region 6, the United States Attorney for the Eastern District of Arkansas, and the United States Department of Justice, in accordance with Section XIII of this Decree (Notices). Defendant may assert that such proposed written agreement to be provided under this Paragraph is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.

4.    Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties include responsibility for compliance with any provision of this Decree, as well as to any contractor entity retained to perform work required under this Consent Decree. Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

5.    In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree, unless Defendant establishes that such failure resulted from a Force Majeure event as defined in Section VIII of this Consent Decree.

### III. DEFINITIONS

6.    Terms used in this Consent Decree that are defined in RCRA or in regulations promulgated pursuant to or authorized by RCRA shall have the meanings assigned to them in RCRA or such regulations, unless otherwise provided in this Decree. Regulations referred to by their federal citations also shall include reference to their State counterparts (e.g. 40 C.F.R. § 264.601 also includes reference to APCEC Regulation No. 23 § 264.601). Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.    "ADEQ" shall mean the Arkansas Department of Environmental Quality and any of its successor departments or agencies;

b.    "Amended Complaint" shall mean the Amended and Supplemental Complaint filed by the United States in this action;

c.    "Complaint" shall mean the Complaint filed by the United States in this action;

d.    "Consent Decree" or "Decree" shall mean this Decree;

e.    "Day" shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or a federal holiday, the period shall run until the close of business of the next business day;

- 7 -

f.    "Defendant" shall mean Rineco Chemical Industries, Inc., a corporation incorporated under the laws of the State of Arkansas and licensed to do business in the State of Arkansas;

g.    "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

h.    "Effective Date" shall have the definition provided in Section XIV;

i.    "Facility" shall mean Defendant's land, structures, other appurtenances, and improvements on the land, used for the treatment, storage, or disposal of hazardous waste located at 817 Vulcan Road in Benton, Arkansas;

j.    "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral;

k.    "Parties" shall mean the United States and Defendant;

l.    "Section" shall mean a portion of this Decree identified by a roman numeral;

m.    "State" shall mean the State of Arkansas;

n.    "TMW" shall mean the Thermal Metal Wash unit, including the thermal oxidation unit, at the Facility.

p.    "United States" shall mean the United States of America, acting on behalf of EPA.

## IV. CIVIL PENALTY

7.   Within thirty (30) Days after the Effective Date of this Consent Decree, Defendant shall pay the sum of $1,350,000 as a civil penalty.

8.   Defendant shall pay the civil penalty due by Fed Wire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to Defendant, following lodging of the Consent Decree, by the Financial Litigation Unit of the U.S. Attorney's Office for the Eastern District of Arkansas, USA Post Office Box 1229 Little Rock, AR 72203, 501-340-2600.  At the time of payment, Defendant shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in United States v. Rineco Chemical Industries, Inc., and shall reference the civil action number and DOJ case number 90-7-1-08902, to the United States in accordance with Section XIII of this Decree (Notices); by email to acctsreceivable.CINWD@epa.gov; and by mail to:

         EPA Cincinnati Finance Office
         26 Martin Luther King Drive
         Cincinnati, Ohio  45268

9.   Defendant shall not deduct any penalties paid under this Decree pursuant to this Section or Section VII (Stipulated Penalties) in calculating its federal income tax.

## V.   COMPLIANCE REQUIREMENTS

10.   Application for permit for the TMW.   Within sixty
(60)Days after the Effective Date of this Consent Decree,
Defendant shall submit to the Director of ADEQ an application for
a RCRA permit for its TMW as a Subpart X-Miscellaneous Unit in
accordance with 40 C.F.R. §§ 264.600-264.603, 40 C.F.R. §§
270.10-270.14, 270.23, 270.30-270.33, the Risk Burn Guidance for
Hazardous Waste Combustion Facilities, OSWER, EPA530-R-01-001,
July 2001; and the Human Health Risk Assessment Protocol for
Hazardous Waste Combustion Facilities, OSWER, EPA-R-05-006,
September 2005.   Within sixty (60)Days after the Effective Date
of this Consent Decree, Defendant also shall submit to the
Director of ADEQ an application for a RCRA permit for storage of
hazardous waste related to the TMW.   Defendant shall
simultaneously provide the Associate Director of the Hazardous
Waste Enforcement Branch, EPA Region 6, with a copy of such
applications, in accordance with Section XIII (Notices).   The TMW
must be located, designed, constructed, operated, maintained, and
closed in a manner that will ensure protection of human health
and the environment.   The permit application must include such
terms and conditions as necessary to protect human health and the
environment, including, but not limited to, as appropriate,
design and operating requirements for responses to releases of
hazardous waste or hazardous constituents from the TMW.   The

- 10 -

permit application must include those requirements of subparts I through O, X, and subparts AA through CC of part 264, part 270, part 63 subpart EEE, and part 146 of chapter 40 that are appropriate for the TMW.

11.   Defendant must notify the public, hold a public meeting, and offer the public an opportunity to comment regarding Defendant's application for a permit for the TMW in accordance with 40 C.F.R. Part 124, as applicable, and 40 C.F.R. § 270.42(c).

12.   <u>Preparation and Submission of Trial Burn Plan</u>.  For the purpose of determining feasibility of compliance with the performance standards of 40 C.F.R. § 264.343, and determining adequate operating conditions under 40 C.F.R. §§ 264.345, as part of its RCRA permit application for the TMW, Defendant must prepare and submit to the Director of ADEQ a trial burn plan and perform a trial burn in accordance with 40 C.F.R. § 270.62(b).

13.   The trial burn plan must include all of the information required by 40 C.F.R. § 270.62(b)(2).

14.   After the Director of ADEQ has evaluated the sufficiency of the information provided, Defendant must provide any supplemental information required by the Director of ADEQ in accordance with 40 C.F.R. § 270.62(b)(3).

15.   During the trial burn, Defendant must calculate the trial Principal Organic Hazardous Constituents ("POHCs")

- 11 -

specified by the Director of ADEQ based on the waste analysis data in the trial burn plan submitted by Defendant in accordance with 40 C.F.R. § 270.62(b)(4).

16.   The trial burn performed by Defendant must comply with 40 C.F.R. § 270.62(b)(5).

17.   Defendant shall not commence the trial burn until after the Director of ADEQ has issued a notice to all persons on the Facility mailing list as set forth in 40 C.F.R. § 124.10(c)(1)(ix) and to the appropriate units of State and local government as set forth in 40 C.F.R. §§ 124.10(c)(1)(x) announcing the scheduled commencement and completion date for the trial burn as required by 40 C.F.R. § 270.62(b)(6).

18.   During the trial burn (or as soon after the burn as is practicable), Defendant shall make the determinations required by 40 C.F.R. § 270.62(b)(7).  During the trial burn, Defendant must demonstrate compliance with the performance standards required by 40 C.F.R. § 264.343.

19.   Preparation and Submission of Risk Burn Plan.   To collect emissions data for evaluation in a site-specific risk assessment, as part of its RCRA permit application for the TMW, Defendant also must prepare and submit a risk burn plan and perform a risk burn in accordance with the Risk Burn Guidance for Hazardous Waste Combustion Facilities, OSWER, EPA530-R-01-001, July 2001; and the Human Health Risk Assessment Protocol for

- 12 -

Hazardous Waste Combustion Facilities, OSWER, EPA-R-05-006, September 2005. The risk burn should be integrated with the trial burn to produce a consistent set of proposed enforceable permit conditions.

20. The risk burn performed by Defendant shall collect fugitive and stack emissions data and define the operating requirements for the TMW based on control parameters identified in Chapters 4 through 7 of the Risk Burn Guidance for Hazardous Waste Combustion Facilities. During the risk burn, Defendant shall evaluate each of the constituents specified in Chapters 4 though 7 of the Risk Burn Guidance including the dioxins, furans, other organics, metals, particulate matter, hydrogen chloride, and chlorine identified therein.

21. During the risk burn (or as soon after the burn as is practicable), the Defendant shall make the determinations set forth in the Risk Burn Guidance for Hazardous Waste Combustion Facilities, and the Human Health Risk Assessment Protocol for Hazardous Waste Combustion Facilities deemed appropriate by the Director of ADEQ. During the risk burn, Defendant must demonstrate that emissions from the TMW do not present a risk to human health or the environment.

22. Within ninety (90) days after completion of the trial and risk burns, or later if approved by the Director of ADEQ, Defendant must submit to the Director of ADEQ a certification

- 13 -

that the trial and risk burns have been carried out in accordance
with the approved trial and risk burn plans, and must submit the
results of all the determinations required in 40 C.F.R. §
270.62(b)(7).

23.   All data collected during the trial and risk burns
must be submitted to the Director of ADEQ following the
completion of the trial and risk burns.  A copy of the data
collected during the trial and risk burns also must be submitted
to the Associate Director of the Hazardous Waste Enforcement
Branch, EPA Region 6, in accordance with Section XIII of this
Consent Decree (Notices).

24.   All submissions required by Section V must be
certified on behalf of the Defendant by the signature of a person
authorized to sign a permit application or a report under 40
C.F.R. § 270.11.

25.   Defendant shall request that the final RCRA permit for
the TMW include performance standards, operating requirements,
monitoring and inspection requirements, and closure requirements
in accordance with 40 C.F.R. §§ 264.343, 264.345, 264.347, and
264.351.  Defendant also shall request that the final permit for
the TMW shall include risk based terms and conditions necessary
to protect human health and the environment in accordance with
the Risk Burn Guidance for Hazardous Waste Combustion Facilities

- 14 -

and the Human Health Risk Assessment Protocol for Hazardous Waste Combustion Facilities.

26.   <u>Continued Operation.</u> Upon Defendant's submission of the initial application for a RCRA permit for the TMW, including the trial and risk burn plans, Defendant may continue to operate the TMW during the one year following such submission if Defendant otherwise maintains compliance with the requirements of this Decree.   Whenever the Director of ADEQ issues a final permit for the TMW, Defendant immediately must comply with that permit, even if the permit is issued in less than one year after Defendant submits its initial application.   Without a final permit, Defendant may not operate the TMW at anytime later than one year after Defendant submits its initial application, except as that time is enlarged under Paragraphs 29, 45, 46, 47, or 76 of this Consent Decree.   The requirements of this Paragraph shall not be stayed as a result of any challenge or appeal by Defendant of the final RCRA permit for the TMW, or any of its terms or conditions, issued by the Director of ADEQ.

27.   <u>EPA Review and Comment.</u> Nothing in this Consent Decree shall limit the EPA's rights under applicable environmental laws or regulations, including but not limited to, Section 3005(c)(3) of RCRA, 42 U.S.C. § 6925, 40 CFR §§ 270.32 and 40 C.F.R. §§ 271.19, to review, comment, and incorporate applicable requirements of parts 264 and 266 through 268 of

chapter 40 directly into the permit or establish other permit conditions that are based on those parts; or to take action under Section 3008(a)(3) of RCRA, 42 U.S.C. § 6928, against Defendant on the ground that the RCRA permit for the TMW does not comply with a condition that the EPA Regional Administrator in commenting on the permit application or draft permit stated was necessary to implement approved State program requirements, whether or not that condition was included in the final permit. If Defendant disputes an action taken by EPA pursuant to 40 CFR §§ 270.32 or 40 C.F.R. §§ 271.19, the Defendant may ask the District Court to resolve such dispute in accordance with Section IX of this Consent Decree (Dispute Resolution). The District Court shall resolve such dispute in accordance with applicable law.

28.    To comply with this Consent Decree, Defendant must obtain a RCRA permit for the TMW as a Subpart X-Miscellaneous Unit in accordance with 40 C.F.R. §§ 264.600-264.603, 40 C.F.R. §§ 270.10-270.14, 270.23, 270.30-270.33, the Risk Burn Guidance for Hazardous Waste Combustion Facilities, OSWER, EPA530-R-01-001, July 2001; and the Human Health Risk Assessment Protocol for Hazardous Waste Combustion Facilities, OSWER, EPA-R-05-006, September 2005.

29.    TMW Permit. Defendant shall prepare and submit its application for a RCRA permit for the TMW as required in this

- 16 -

Section V.   Defendant may seek relief under the provisions of Section VIII of this Consent Decree (Force Majeure) for any delay in the performance of any such obligations resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendant has submitted a timely and complete application and has taken all other actions necessary to obtain such permit or approval.

30.   <u>Fugitive Emissions</u>.   Within thirty (30)Days after the Effective Date of this Consent Decree, during the period before Defendant obtains its RCRA permit for the TMW, consistent with 40 C.F.R. §§ 264.345(d) and 264.347(b), Defendant shall control fugitive emissions from the TMW by:

a.   Keeping the treatment zone totally sealed against fugitive emissions; or

b.   Maintaining a treatment zone pressure lower than atmospheric pressure; or

c.   Establishing an alternative means of control demonstrated (with part B of the permit application) to provide fugitive emissions control equivalent to maintenance of treatment zone pressure lower than atmospheric pressure.

Defendant shall conduct a thorough visual inspection of the TMW treatment zone and associated equipment (pumps, values, conveyors, pipes, etc.), at least daily, for leaks, spills, fugitive emissions, and other signs of tampering.   The results of

- 17 -

this inspection must be recorded, and such records must be placed in the operating record for the Facility required by 40 C.F.R. § 264.73.

As part of its application for a RCRA permit for the TMW, Defendant shall propose as permit conditions the above fugitive emissions requirements.

31.   Within sixty (60) Days after the Effective Date of this Consent Decree, Defendant shall file with the State a notification and description of hazardous waste activity expressly related to the TMW performed at the Facility in accordance with Section 3010 of RCRA, 42 U.S.C. § 6930.  A copy of the notification required by this Paragraph also must be submitted to the Associate Director of the Hazardous Waste Enforcement Branch, EPA Region 6, in accordance with Section XIII of this Consent Decree (Notices).

32.   Within sixty (60) Days after the Effective Date of this Consent Decree, Defendant shall submit to the Director of ADEQ an application for and establish financial assurance for closure of the TMW and related storage units at the Facility in accordance with Section 3004(a) of RCRA, 42 U.S.C. § 6924(a), and 40 C.F.R. § 264, Subpart H.  A copy of the application and documentation of the financial assurances required by this Paragraph also must be submitted to the Associate Director of the

Hazardous Waste Enforcement Branch, EPA Region 6, in accordance
with Section XIII of this Consent Decree (Notices).

VI.   REPORTING REQUIREMENTS

33.   Defendant shall submit the following reports:

(a).   Within 30 days after the end of each six month
period following the Effective Date of this Consent Decree but
before the final RCRA permit for the operation of the TMW is
issued, and thirty (30) Days after the end of each calendar year
thereafter until termination of this Decree pursuant to Section
XVII, Defendant shall submit a report for the preceding six month
period or calendar year, respectively, that summarizes the status
of Defendant's application for a RCRA permit for the TMW and the
status of compliance with the requirements of this Consent
Decree.

b.   The report also shall include a description of any
non-compliance with the requirements of Section V of this Consent
Decree and an explanation of the violation's likely cause and of
the remedial steps taken, or to be taken, to prevent or minimize
such violation.   If the cause of a violation cannot be fully
explained at the time the report is due, Defendant shall so state
in the report.   Defendant shall investigate the cause of the
violation and shall then submit an amendment to the report,
including a full explanation of the cause of the violation,
within thirty (30) Days after Defendant becomes aware of the

- 19 -

cause of the violation.  Nothing in this Paragraph or the
following Paragraph relieves Defendant of its obligation to
provide the notice required by Section VIII of this Consent
Decree (Force Majeure).

     c.   Whenever any violation of this Consent Decree or any
other event affecting Defendant's performance under this Decree
may pose an immediate threat to the public health or welfare or
the environment, Defendant shall notify the Section Chief,
Hazardous Waste Enforcement Section, Compliance Assurance and
Enforcement Division, EPA, Region 6, 1445 Ross Avenue, Dallas,
Texas 75202 by telephone to (214) 665-8006, by electronic or
facsimile transmission to (214) 665-7446 as soon as possible, but
no later than twenty-four (24) hours after Defendant first knew
of the violation or event.  This procedure is in addition to the
requirements set forth in the preceding Paragraph.

     d.   All reports shall be submitted to the persons
designated in Section XIII of this Consent Decree (Notices).

     e.   Each report submitted by Defendant under this
Section shall be signed by an official of the submitting party
and include the following certification:

> I certify under penalty of law that this
> document and all attachments were prepared
> under my direction or supervision in
> accordance with a system designed to assure
> that qualified personnel properly gather and
> evaluate the information submitted.  Based on
> my inquiry of the person or persons who

- 20 -

> manage the system, or those persons directly
> responsible for gathering the information,
> the information submitted is, to the best of
> my knowledge and belief, true, accurate, and
> complete.  I am aware that there are
> significant penalties for submitting false
> information, including the possibility of
> fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or

similar notifications where compliance would be impractical.

     f.   The reporting requirements of this Consent Decree

do not relieve Defendant of any reporting obligations required by

RCRA or its implementing regulations, or by any other federal,

state, or local law, regulation, permit, or other requirement.

     g.   Any information provided pursuant to this Consent

Decree may be used by the United States in any proceeding to

enforce the provisions of this Consent Decree and as otherwise

permitted by law.

## VII.  STIPULATED PENALTIES

34.  Defendant shall be liable for stipulated penalties to

the United States for violations of this Consent Decree as

specified below, unless excused under Section VIII (Force

Majeure).  A violation includes failing to perform any obligation

required by the terms of this Decree, according to all applicable

requirements of this Decree and within the specified time

schedules established by or approved under this Decree.

- 21 -

35.   <u>Late Payment of Civil Penalty</u>.   If Defendant fails to pay the civil penalty required to be paid under Section IV of this Decree (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $3,000 per Day for each Day that the payment is late.

36.   <u>Compliance Milestones</u>.   The following stipulated penalties shall accrue per violation per Day for each violation of the requirements identified in the following subparagraphs:

a.   Failure to within sixty (60) Days after the Effective Date of this Consent Decree, submit an application to the Director of ADEQ for a RCRA permit for the TMW as required by Paragraph 10 of this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $3,000 | 15th through 30th Day |
| $10,000 | 31st Day and beyond |

b.   Failure to prepare and submit trial burn and risk burn plans and perform trial and risk burns as required by Paragraphs 12-24 of this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $3,000 | 15th through 30th Day |
| $10,000 | 31st Day and beyond |

- 22 -

c.   Operation of the TMW without a final permit after the time allowed in Paragraph 26 in this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $10,000 | 1st through 14th Day |
| $25,000 | 15th Day and beyond |

d.   Failure to, within sixty (60) Days after the Effective Date of this Consent Decree, file with the State a notification and description of hazardous waste activity expressly related to the TMW operated at the Facility in accordance with Section 3010 of RCRA, 42 U.S.C. § 6930:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $1,500 | 15th through 30th Day |
| $2,500 | 31st Day and beyond |

e.   Failure to, within sixty (60) Days after the Effective Date of this Consent Decree,  establish financial assurance for or closure of the TMW and related storage units at the Facility in accordance with Section 3004(a) of RCRA, 42 U.S.C. § 6924(a), and 40 C.F.R. § 264, Subpart H.

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $3,000 | 15th through 30th Day |
| $10,000 | 31st Day and beyond |

- 23 -

37.    Reporting Requirements.  The following stipulated
penalties shall accrue per violation per Day for each violation
of the reporting requirements of Section VI of this Consent
Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $1,500 | 15th through 30th Day |
| $2,500 | 31st Day and beyond |

38.  The stipulated penalties under this Section shall begin
to accrue on the Day after performance is due or on the Day a
violation occurs, whichever is applicable, and shall continue to
accrue until performance is satisfactorily completed or until the
violation ceases.  Stipulated penalties shall accrue
simultaneously for separate violations of this Consent Decree.

39.    Defendant shall pay any stipulated penalty within
sixty (60) Days of receiving the United States' written demand,
unless Defendant invokes the Dispute Resolution procedures under
Section IX (Dispute resolution).  A demand for the payment of the
stipulated penalties will identify the particular violation(s) to
which the stipulated penalty relates and the penalty amount that
the United States is demanding for each violation (as best as can
be estimated).

- 24 -

40.    The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

41.    Stipulated penalties shall continue to accrue as provided in Paragraph 38, during any Dispute Resolution, but need not be paid until the following:

a.    If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States within thirty (30)Days of the effective date of the agreement or the receipt of EPA's decision or order.

b.    If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within sixty (60) Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c.    If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within sixty (60) Days of receiving the final appellate court decision.

42.    Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation

- 25 -

notices required by Paragraph 8, except that the transmittal
letter shall state that the payment is for stipulated penalties
and shall state for which violation(s) the penalties are being
paid.

43.   If Defendant fails to pay stipulated penalties
according to the terms of this Consent Decree, Defendant shall be
liable for interest on such penalties, as provided for in 28
U.S.C. § 1961, accruing as of the date payment became due.
Nothing in this Paragraph shall be construed to limit the United
States from seeking any remedy otherwise provided by law for
Defendant's failure to pay any stipulated penalties.

44.   Subject to the provisions of Section XI of this
Consent Decree (Effect of Settlement/Reservation of Rights), the
stipulated penalties provided for in this Consent Decree shall be
in addition to any other rights, remedies, or sanctions available
to the United States for Defendant's violation of this Consent
Decree or applicable law.  Where a violation of this Consent
Decree is also a violation of RCRA or its implementing
regulations, Defendant shall be allowed a credit, for any
stipulated penalties paid, against any statutory penalties
imposed for such violation.

VIII.   FORCE MAJEURE

45.   "Force Majeure" for purposes of this Consent Decree, is
defined as any event arising from causes beyond the control of

Defendant, of any entity controlled by Defendant, or of Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts under the circumstances to fulfill the obligation. The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible.  "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

46.    Defendant shall provide notice to the Section Chief, Hazardous Waste Enforcement Section, Compliance Assurance and Enforcement Division, EPA, Region 6, 1445 Ross Avenue, Dallas, Texas 75202 by telephone to (214) 665-8006, by electronic or facsimile transmission to (214) 665-7446 within seventy-two (72) hours of when Defendant first knew of a claimed Force Majeure event.  Within fourteen (14) Days thereafter, Defendant shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; and

Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment. Defendant shall include with any notice documentation supporting the claim that the delay was attributable to a Force Majeure. Failure to comply with the above requirements shall preclude Defendant from asserting any claim of Force Majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.  Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors had knowledge.  For purposes of claiming a Force Majeure event related to Defendant's failure to receive a final RCRA permit for the TMW within one year after Defendant submits its initial application, Defendant must provide written notice and documentation to the Section Chief, Hazardous Waste Enforcement Section, Compliance Assurance and Enforcement Division, and the Chief of the Office of Regional Counsel, RCRA Enforcement Branch, EPA Region 6, not later than fourteen (14) Days after one year after Defendant submits its initial application that Defendant has not received a final RCRA permit for the TMW. Such written notice must provide an explanation and description of Defendant's submission of a timely and complete

- 28 -

application and other actions taken necessary to obtain such permit, but need not provide an explanation or description of the reasons for the delay or other matters referred to above in this Paragraph, if such reasons or other matters are beyond the knowledge of Defendant.

47.    If EPA agrees that the delay or anticipated delay is attributable to a Force Majeure event, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure event will be extended by EPA for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the Force Majeure event shall not, of itself, extend the time for performance of any other obligation.  EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the Force Majeure event.

48.    If EPA does not agree that the delay or anticipated delay has been or will be caused by a Force Majeure event, EPA will notify Defendant in writing of its decision.

49.    If Defendant elects to invoke the dispute resolution procedures set forth in Section IX (Dispute Resolution), it shall do so no later than thirty (30) Days after receipt of EPA's notice.  In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the

- 29 -

delay or anticipated delay has been or will be caused by a Force
Majeure event, that the duration of the delay or the extension
sought was or will be warranted under the circumstances, that
best efforts were exercised to avoid and mitigate the effects of
the delay, and that the Defendant complied with the requirements
of Paragraphs 45 and 46, above.  If the Defendant carries this
burden, the delay at issue shall be deemed not to be a violation
by the Defendant of the affected obligation of this Consent
Decree identified to EPA and the Court.

IX.   DISPUTE RESOLUTION

50.   Unless otherwise expressly provided for in this
Consent Decree, the dispute resolution procedures of this Section
shall be the exclusive mechanism to resolve disputes arising
under or with respect to this Consent Decree.

51.   Informal Dispute Resolution.  Any dispute subject to
Dispute Resolution under this Consent Decree shall first be the
subject of informal negotiations.  The dispute shall be
considered to have arisen when Defendant serves the United States
with a written Notice of Dispute, in accordance with Section XIII
of this Consent Decree (Notices).  Such Notice of Dispute shall
state clearly the matter in dispute.  The period of informal
negotiations shall not exceed forty-five (45) Days from the date
the dispute arises, unless that period is modified by written
agreement of the Parties.  If the Parties cannot resolve a

dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within forty-five (45) Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

52.   Formal Dispute Resolution.   Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute.   The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

53.   The United States shall serve its Statement of Position within forty-five (45) Days of receipt of Defendant's Statement of Position.   The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.   If the United States does not accept Defendant's position, the United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

54.   Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States a motion requesting judicial resolution of the dispute.   The motion must be filed within forty-five (45) Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph.   The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

55.   The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court. Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

56.   The Court shall decide all disputes pursuant to applicable principles of law for resolving such disputes.   In their initial filings with the Court under Paragraphs 55 and 56, the Parties shall state their respective positions as to the applicable standard of law for resolving the particular dispute. The Court shall not draw any inference nor establish any presumptions adverse to any Party as a result of invocation of this Section or the Parties' inability to reach agreement.

57.    The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 41.   If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VII (Stipulated Penalties).

## X.   INFORMATION COLLECTION AND RETENTION

58.    The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into the Facility at all reasonable times, upon presentation of credentials, to:

a.    monitor the progress of activities required under this Consent Decree;

b.    verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

c.    obtain samples and, upon request, splits and results of any samples taken by Defendant or its representatives, contractors, or consultants;

- 33 -

d.   obtain documentary evidence, including photographs and similar data; and

e.   assess Defendant's compliance with this Consent Decree.

59.   Upon request, EPA shall provide Defendant splits and results of any samples taken by EPA.

60.   Until two years after the termination of this Consent Decree, Defendant shall retain (in paper or electronic form), and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate to Defendant's performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, Defendant shall make available to EPA copies of any documents, records, or other information required to be maintained under this Paragraph. Notwithstanding the provisions of this Paragraph, Defendant may request in writing permission from EPA to not preserve, to not maintain, or to destroy certain specified categories of documents. Defendant's obligations will

- 34 -

remain unchanged, however, unless and until EPA issues written
approval of the request, which may or may not, in EPA's
discretion, include a waiver of Defendant's obligations under
this Paragraph.

61.   At the conclusion of the information-retention period
provided in the preceding Paragraph, Defendant shall notify the
United States at least ninety (90) Days prior to the destruction
of any documents, records, or other information subject to the
requirements of the preceding Paragraph and, upon request by the
United States, Defendant shall make any such documents, records,
or other information available to EPA for inspection, copying or
retention.   Defendant may assert that certain documents, records,
or other information is privileged under the attorney-client
privilege or any other privilege recognized by federal law.   If
Defendant asserts such a privilege, in lieu of providing
documents, it shall notify the United States that such a claim is
being made, and upon request, shall provide the following:   (1)
the title of the document, record, or information; (2) the date
of the document, record, or information; (3) the name and title
of each author of the document, record, or information; (4) the
name and title of each addressee and recipient; (5) a description
of the subject of the document, record, or information; and (6)
the privilege asserted by Defendant.   However, no documents,
records, or other information created or generated pursuant to

- 35 -

the requirements of this Consent Decree shall be withheld on grounds of privilege.

62.    Defendant may also assert that information required to be provided under this Section is protected as CBI under 40 C.F.R. Part 2.  As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

63.    This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal or State laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XI.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

64.    This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint and the Amended Complaint filed in this action through the Effective Date of this Consent Decree.

65.    The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 64.  This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under RCRA or its

implementing regulations, or under other federal or State laws,
regulations, or permit conditions, except as expressly specified
in Paragraph 64.  The United States further reserves all legal
and equitable remedies to address any imminent and substantial
endangerment to the public health or welfare or the environment
arising at, or posed by, Defendant's Facility under Section 7003
of RCRA, 42 U.S.C. §§ 6973.

66.  In any subsequent administrative or judicial
proceeding initiated by the United States for injunctive relief,
civil penalties, other appropriate relief relating to the
Facility, the Defendant shall not assert, and may not maintain,
any defense or claim based upon the principles of waiver, res
judicata, collateral estoppel, issue preclusion, claim
preclusion, claim-splitting, or other defenses based upon any
contention that the claims raised by the United States in the
subsequent proceeding were or should have been brought in the
instant case, except with respect to claims that have been
specifically resolved pursuant to Paragraph 64 of this Section.

67.  This Consent Decree is not a permit, or a modification
of any permit, under any federal, State, or local laws or
regulations.  Defendant is responsible for achieving and
maintaining compliance with all applicable federal, State, and
local laws, regulations, and permits; and Defendant's compliance
with this Consent Decree shall be no defense to any action

- 37 -

commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with RCRA, or with any other provisions of federal, State, or local laws, regulations, or permits.

68. This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

69. This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree, or to release or waive any claim, cause of action, demand, or defense in law or equity that any party to this Consent Decree may have against any person(s) or entity not a party to this Consent Decree.

## XII.  COSTS

70. The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the

civil penalty or any stipulated penalties due but not paid by

Defendant.

## XIII.   NOTICES

71.   Unless otherwise specified herein, whenever

notifications, submissions, or communications are required by

this Consent Decree, they shall be made in writing and addressed

as follows:

To the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Box 7611 Ben Franklin Station
Washington, D.C.  20044-7611
Re: DOJ No. 90-7-1-08902

and

To EPA:

Associate Director
Compliance Assurance and Enforcement Division (RCRA Enforcement
Division)
U.S. Environmental Protection Agency
Region 6
1445 Ross Avenue
Dallas, Texas 75202

Multimedia Planning and Permitting Division (RCRA Permits
Division)
U.S. Environmental Protection Agency
Region 6
1445 Ross Avenue
Dallas, Texas  75221

To Defendant:

Rineco Chemical Industries, Inc.
P.O. Box 729
Benton, Arkansas  72018

- 39 -

72.   Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

73.   Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

### XIV.   EFFECTIVE DATE

74.   The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

### XV.   RETENTION OF JURISDICTION

75.   The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections IX and XVI, or effectuating or enforcing compliance with the terms of this Decree.

### XVI.   MODIFICATION

76.   The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

77.    Any disputes concerning modification of this Decree
shall be resolved pursuant to Section IX of this Decree (Dispute
Resolution) provided, however, that, instead of the burden of
proof provided by Paragraph 56, the Party seeking the
modification bears the burden of demonstrating that it is
entitled to the requested modification in accordance with Federal
Rule of Civil Procedure 60(b).

XVII.    TERMINATION

78.    After Defendant has complied with the requirements of
Section V of this Consent Decree  (Compliance Requirements), has
thereafter maintained satisfactory compliance with this Consent
Decree and the RCRA permit for the TMW issued by the Director of
ADEQ for a period of one year, and has paid the civil penalty and
any accrued stipulated penalties as required by this Consent
Decree, Defendant may serve upon the United States a Request for
Termination, stating that Defendant has satisfied those
requirements, together with all necessary supporting
documentation.

79.    Following receipt by the United States of Defendant's
Request for Termination, the Parties shall confer informally
concerning the Request and any disagreement that the Parties may
have as to whether Defendant has satisfactorily complied with the
requirements for termination of this Consent Decree.  If the
United States agrees that the Decree may be terminated, the

- 41 -

Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

80.    If the United States does not agree that the Decree may be terminated, Defendant may invoke Dispute Resolution under Section IX of this Decree.  However, Defendant shall not seek Dispute Resolution of any dispute regarding termination, under Paragraph 52 of Section IX, until thirty (30) Days after service of its Request for Termination.

XVIII.   PUBLIC PARTICIPATION

81.    This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XIX.   SIGNATORIES/SERVICE

82.    Each undersigned representative of Defendant and the
Assistant Attorney General for the Environment and Natural
Resources Division of the Department of Justice certifies that he
or she is fully authorized to enter into the terms and conditions
of this Consent Decree and to execute and legally bind the Party
he or she represents to this document.

83.    This Consent Decree may be signed in counterparts, and
its validity shall not be challenged on that basis.    Defendant
agrees to accept service of process by mail with respect to all
matters arising under or relating to this Consent Decree and to
waive the formal service requirements set forth in Rules 4 and 5
of the Federal Rules of Civil Procedure and any applicable Local
Rules of this Court including, but not limited to, service of a
summons.

## XX.   INTEGRATION

84.    This Consent Decree constitutes the final, complete,
and exclusive agreement and understanding among the Parties with
respect to the settlement embodied in the Decree and supercedes
all prior agreements and understandings, whether oral or written,
concerning the settlement embodied herein.   No other document,
nor any representation, inducement, agreement, understanding, or
promise, constitutes any part of this Decree or the settlement it

represents, nor shall it be used in construing the terms of this Decree.

## XXI.   FINAL JUDGMENT

85.   Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and the Defendant.   The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

Dated and entered this 16th day of August, 2010.

_____
UNITED STATES DISTRICT COURT JUDGE

FOR THE UNITED STATES:


Dated: 4/27/10        *Ignacia S. Moreno*
                      IGNACIA S. MORENO
                      Assistant Attorney General
                      Environment and Natural Resources Division
                      United States Department of Justice


Dated: 5/13/10        *Richard Gladsten*
                      RICHARD GLADSTEN
                      Senior Counsel
                      Environmental Enforcement Section
                      Environment and Natural Resources Division
                      United States Department of Justice
                      P.O. Box 7611
                      Washington, D.C.  20044-7611
                      (202) 514-1711


- 45 -

*United States v. Rineco Chemical Industries, Inc.*
Civil Action No. 4-07-CV 01189SWW
Consent Decree

<u>FOR THE ENVIRONMENTAL PROTECTION AGENCY:</u>

Date: 5/19/10

for AL ARMENDARIZ
Regional Administrator
U.S. Environmental Protection
Agency, Region VI
1445 Ross Avenue
Dallas, Texas 75202-2733

Date: 5/17/10

TERRY SYKES
RCRA Enforcement Branch
U.S. Environmental Protection
Agency, Region 6
1445 Ross Avenue, Suite 1200
Dallas, Texas 75202-2733

- 46 -

FOR DEFENDANT RINECO CHEMICAL INDUSTRIES, INC.

Date: 12/7/2009

LARRY WILLIAMS
Rineco Chemical Industries, Inc.
819 Vulcan Road
Benton, Arkansas   72015

- 47 -